GULOTTA, Judge.
Plaintiff, a 41-year-old licensed plumber, appeals from a workmen’s compensation award based on permanent partial disability of a leg resulting from a torn cartilage injury which required surgical removal of the cartilage.
It is plaintiff’s contention that the trial judge erred in failing to award benefits based upon permanent total disability and in failing to hold the “medical portion of plaintiff’s case open” for “medical benefits” under LSA-R.S. 23:1203.[1]
In answer to plaintiff’s appeal, defendants contend the trial judge erred in finding a work-related accident and further claim, alternatively, that plaintiff is not totally and permanently disabled from doing plumbing work. In this latter connection, defendants argue the disability sustained by plaintiff amounts to llh% of the leg and not 12V2% as found by the trial judge.[2] We affirm.
The trial court’s conclusion that the torn cartilage was work-related is supported by the record. Plaintiff testified that on the morning of May 29,1974, in the course of running underground sewer pipes for his employer, he had twisted his knee and had suffered severe pain while lowering into a ditch a length of pipe weighing between 375-400 pounds. He further stated that he had mentioned the pain to a coworker and that he had worked, in pain, for the remainder of the day. His testimony in this respect was corroborated by that of his former coworker, Jacob Pabst, who *98 stated that plaintiff had complained of leg pain, though he had not reported any injury or accident to him. Five days after the incident,- plaintiff sought medical treatment.
Dr. G. Gernon Brown, Jr., plaintiffs treating orthopedic surgeon, in deposition, stated that meniscus tears commonly occur from twisting injuries and that plaintiff’s torn cartilage could very well have resulted from the injury described by plaintiff.[3] Considering this evidence, we cannot say the trial judge's factual conclusion that plaintiff suffered a work-related injury is unsupported.
The trial court’s conclusion that plaintiff was not totally and permanently disabled from resuming his pre-injury occupation is also supported by the record. A postoperative examination on October 30, 1974, following a July 10, 1974 removal of the cartilage, revealed no swelling and full range of motion in the knee. Plaintiff walked normally, without a limp. Plaintiff was advised, at that time, that he could return to work. Dr. Brown explained that as a result of the torn meniscus plaintiff has a 15% disability of the knee and because of the arthritis he has an additional 10% disability. Significantly, Dr. Brown stated that the arthritis of the knee was not affected by the trauma to the cartilage. The physician further stated that a slight reduction of motion of the knee observed in his last examination on October 22, 1976,-was not due to any problem with the meniscus, but as a result of the arthritic process. According to the doctor, plaintiff has recovered satisfactorily from the knee operation.
Plaintiff testified that he went back to work on approximately November 12, 1974 and is presently employed as a pipefitter at a wage greater than that earned at the time of the accident. He stated that phases of pipefitting work, such as climbing, are similar to those in plumbing. Further evidence of the similarity between plumbing and pipefitting is the testimony of an expert witness who stated that both jobs involve similar activities, including stooping and climbing, though pipefitting does not involve quite as much underground work.
The evidence considered, we find no error in the trial court’s determination that plaintiff failed to establish a permanent total disability.
We reject also plaintiff’s contention that the trial judge erred in failing to hold the medical portion of plaintiff’s case open for medical benefits. LSA-R.S. 23:1331 provides:
§ 1331. Modification by agreement of parties, approval by court; judicial review
“A judgment of compensation may be modified by subsequent agreement between the parties, with the approval of a judge of the court which rendered the same.
“At any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, on the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through error, fraud, or misrepresentation. In such cases the provisions of R.S. 23:1121 through R.S. 23:1124 with reference to medical examinations shall apply.”
Further, LSA-R.S. 23:1121 provides:
§ 1121. Examination of injured employee
“An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter.”
These statutes provide for a later modification of the judgment dependent upon plaintiff’s future medical condition. Under the circumstances, we find no prejudice to *99 plaintiff’s right, at a later time, to seek modification.
Because we have concluded the evidence supports the conclusions that plaintiff sustained a work-related accident and that his disability is not of a total and permanent nature, we find no necessity to address defendants’ contention (in answer to the appeal) that plaintiff sustained a llk% disability of the leg rather than a 12V2% disability as determined by the trial judge. According to the insurer, the argument regarding the percentage of disability is made only for the purpose of showing the absence of total and permanent disability. In this connection, we might add that because plaintiff has received $1,560.00 in workmen’s compensation payments, for which defendants are allowed credit, defendants are not responsible for the payment of any additional amount to plaintiff. The trial judge properly pointed out that in spite of the trial court’s award “plaintiff is unable to recover anything for his present disability”. See LSA-R.S. 23:1223. In the final analysis, in this case, whether or not plaintiff is entitled to a 12V2% or a llfa% disability makes no financial difference to defendants.
Accordingly, the judgment is affirmed.

AFFIRMED.

. LSA-R.S. 23:1203 (Acts 1968, No. 103, § 1), applicable at the time plaintiff sustained injury, May 29, 1974, provided as follows:
§ 1203. Medical expenses; duty to furnish
“The employer shall in every case coming under this Chapter, furnish all necessary medical, surgical, hospital services and medicines or any non-medical treatment recognized by the laws of this state as legal, not to exceed the total sum of twelve thousand five hundred dollars ($12,500.00), except in cases of undue and unusual hardship as hereinafter provided, unless the employee refuses to allow them to be furnished by the employer.
[[Image here]]

. According to defendant, the medical evidence establishes that 15% of the 25% disability of the knee resulted from the torn cartilage and 10% of the 25% disability resulted from degenerative arthritic changes.
In oral argument, the insurer acknowledges that his answer to the appeal does not seek a reduction in the leg disability from 12'/2% to 7‘/2%. Its argument regarding the percentage of disability is made only for the purpose of showing no total and permanent disability exists to prevent plaintiff from doing plumbing work.

. Though plaintiff complained of right knee pain in early June, 1974, it was not until July 1, 1974 that he first mentioned to Dr. Brown that he had injured his knee while lowering a pipe.